UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| SHARON McELGUNN, as personal representative of the estate of Teri Powell, | ) ) ) ) | CIV.  06-5061-KES |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | ORDER GRANTING PLAINTIFF'S FOURTH MOTION TO COMPEL PRODUCTION OF DOCUMENTS |
| CUNA MUTUAL GROUP; CUNA MUTUAL LIFE INSURANCE COMPANY; and CUNA MUTUAL INSURANCE SOCIETY, | ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiff moves to compel defendants to produce discovery pursuant to Magistrate Judge Young's January 31, 2007, order.  Defendants oppose the motion.  The motion is granted.

**FACTUAL BACKGROUND**

Teri Powell initially filed a lawsuit against defendants alleging breach of contract and bad faith based upon defendants' denial of her credit disability claim.  While this action was pending, Powell died and Sharon McElgunn, as personal representative of the estate of Powell, was substituted as plaintiff. Plaintiff served Plaintiff's First Requests for Production of Documents on defendants and thereafter, plaintiff moved the court to order defendants to compel discovery to Plaintiff's First Requests for Production of Documents.

Docket 34.  Defendants opposed the motion.  Docket 55.  On January 31, 2007, Magistrate Judge Young issued an order on plaintiff's first motion to compel production of documents.  Docket 84.

## DISCUSSION

I.    **Production Requests**

A.  **Transcripts of Previous Depositions and Trial Testimony**

In her First Set of Requests for Production of Documents, plaintiff issued request 29, which asked defendants to provide "[a]ny and all transcripts of depositions or trial testimony of any of Defendant's officers and/or claims department personnel handling credit disability insurance claims in Madison, Wisconsin, claims office since January 1, 1996, in any suit alleging fraud or bad faith."  Docket 199-3, at 8.  In ruling on the motion to compel, the magistrate judge noted that request 29 asked for all past litigation since 1996 arising out of credit disability policies for breach of contract or bad faith, and to produce transcripts.  The magistrate judge granted the motion to compel with respect to this request, but limited the discovery to litigation that commenced as of January 1, 2000, to December 31, 2006, and that alleged breach of contract, bad faith, or fraud claims.  Docket 84.

Plaintiff maintains that while defendants have produced a list of 137 cases in which they have been involved since January 1, 2000, defendants have only produced four deposition transcripts.  Plaintiff argues that it is not credible to suggest that only four depositions occurred in the 137 lawsuits.

2

Consequentially, plaintiff argues that defendants have failed to comply with the magistrate judge's order and, therefore, requests that the court compel defendants to turn over the remaining transcripts.  Plaintiff argues that these transcripts are important because they will provide information about defendants' claims handling procedures and will demonstrate defendants' knowledge of certain issues.

Defendants respond that they complied with plaintiff's discovery request by performing a reasonable and diligent search for transcripts.  Defendants argue that although they are involved in litigation throughout the United States, they do not have files filled with transcripts.  Defendants explain that outside counsel is retained in every case to handle the disputes and defendants do not routinely maintain copies of transcripts in their files.  Defendants assert that when they located transcripts responsive to plaintiff's request, they timely produced them as they were required to do and, therefore, properly amended their response to plaintiff's request.

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, a party may serve on any other party a request to produce any designated documents or to inspect, copy, test, or sample any tangible things which are in the possession, custody, or control of the party upon whom the request is served.  "[F]ederal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has *actual*

possession, custody or control, or has the legal right to obtain the documents on demand." In re Bankers Trust Co., 61 F.3d 465, 469 (6th Cir. 1995) (emphasis in original).  In other words, the responding party cannot furnish only that information within his immediate knowledge or possession.  Weaver v. Gross, 107 F.R.D. 715, 718 (D.D.C. 1985).  A party has an obligation to conduct a reasonable inquiry into the factual basis of its responses to discovery and, based on that inquiry, a party responding to the production request is under an affirmative duty to seek that information reasonably available to it from its employees, agents, or others subject to its control.  A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186, 189 (C.D. Cal. 2006). Significantly, control may be established by the existence of a principal-agent relationship or pursuant to a contractual provision.  Rosie D. v. Romney, 256 F. Supp. 2d 115, 119 (D. Mass. 2003).

After receiving Plaintiff's First Set of Requests for Production of Documents, defendants maintain that they conducted a reasonable search for the transcripts requested in document request 29.  Defendants further represent that after the magistrate judge issued his order, they conducted further investigation and supplemented their response to document request 29 by producing all of the transcripts which could be located through reasonable investigation.  Docket 210-2, at ¶¶ 8, 11.

4

It appears that defendants' search for transcripts did not include an effort to obtain transcripts in their custody and control[1] as well as those in their possession.  Defendants' brief suggests that defendants only searched their own files for transcripts and, therefore, failed to obtain transcripts from their outside counsel.  See Docket 210, at 2-3 (stating that while defendants may be involved in litigation throughout the United States, "that does not mean that CUNA Mutual has files full of transcripts" and "that outside counsel are retained in every case to handle the disputes and CUNA Mutual does not routinely maintain copies of transcripts in its files").  Further, Sarah Norberg stated that defendants understood that the magistrate judge's order required them "to provide transcripts in their *possession* for litigation commenced as of January 1, 2000 through December 31, 2006 and limited to breach of contract or bad faith or fraud as to credit disability policies."  Docket 210-2, at ¶ 10 (emphasis added).  Accordingly, to the extent that defendants have not produced transcripts of depositions or trial testimony of defendants' officers and/or claims department personnel handling credit disability insurance claims in the Madison, Wisconsin, claims office from January 1, 2000, to December 31, 2006, arising out of breach of contract, bad faith, or fraud

---

[1] Transcripts in possession of defendants' outside counsel are transcripts within defendants' control because defendants have a legal right to the transcripts and the ability to obtain the transcripts from their outside counsel. See Triple Five of Minnesota, Inc. v. Simon, 212 F.R.D. 523, 527 (D. Minn. 2002).

claims, within their custody or control, the court orders them to do so.  <u>See</u>

Docket 8, at 34 and Docket 199-3, at 8.

### B.  Training Materials and Procedure Guides

In her First Set of Requests for Production of Documents, plaintiff issued

request 11, which asked defendants to provide "[a]ny and all documents . . .

used to train or assist Defendant's claims personnel in processing credit

disability insurance claims."  Docket 199-3, at 4.  Defendants objected to the

request, arguing that such documents are irrelevant.  Plaintiff moved to

compel defendants to produce the requested documents.  The magistrate judge

granted the motion to compel as to the training and procedure guides from

January 1, 2000, to December 31, 2006.  Docket 84, at 2.

### 1.  Manuals and Reference Guides Concerning "Income Wages"

Plaintiff argues that defendants never produced the "Income Wages"

section of the Claims Express Reference Guide.  Plaintiff argues that although

defendants claim that they have produced all relevant materials from the

Claims Express Reference Guide responsive to plaintiff's requests in its

production at CMIS 700-2494, plaintiff has reviewed these pages and has not

located any sections discussing "Income Wages."  Plaintiff maintains that

defense counsel has failed to respond to her request to identify the pages in

CMIS 770-2494 where documents referring to "Income Wages" appear.  As

such, plaintiff requests the court to order defendants to produce all of their

training and procedure guides on the subject of "Income Wages."  Defendants respond that they have produced all relevant materials from the Claims Express Reference Guide responsive to plaintiff's request in their production at CMIS 700-2494.

In her First Set of Requests for Production of Documents, plaintiff sought documents used in processing credit disability insurance claims.  The magistrate judge ordered defendants to produce such documents from January 1, 2000, to December 31, 2006.  Plaintiff represents that a section entitled "Income Wages" is located within the Claims Express Reference Guide and is related to determinations made when processing credit disability claims.  Accordingly, to the extent that defendants have failed to produce the "Income Wages" section of the Claims Express Guide and that such a section existed at some point in time between January 1, 2000, and December 31, 2006, the court orders defendants to produce those documents.  If such a section does not exist, defendants should inform plaintiff why such a section appears within the CMG CE Reference Guide.  See Docket 199-13, at 7.

### 2.   Manuals and Reference Guides Concerning "Unfair Claims Practices"

While plaintiff admits that defendants have produced a "Good Faith Claims Handling Checklist" at CMIS 923-924, plaintiff argues that defendants have failed to produce the "Unfair Claims Practices" section of the Claims Express Reference Guide.  Thus, plaintiff argues that defendants should

7

produce that section due to the magistrate judge's order requiring the production of "training and procedure" guides.  Defendants respond that they have produced all relevant materials from the Claims Express Reference Guide responsive to plaintiff's request in their production at CMIS 700-2494.

Again, as discussed above, plaintiff sought documents used in processing credit disability insurance claims and the magistrate judge ordered defendants to produce such documents within a specified time range.  Plaintiff maintains that a section entitled "Unfair Claims Practices" is located within the Claims Express Reference Guide and is related to decisions made when processing credit disability claims.  As such, to the extent defendants have failed to produce the "Unfair Claims Practices" section of the Claims Express Guide and that such a section existed at some point in time between January 1, 2000, and December 31, 2006, the court orders defendants to produce those documents.  If such a section does not exist, defendants should inform plaintiff why such a section appears within the CMG CE Reference Guide.  See Docket 199-13, at 8.

### 3.   Documents 956, 962, 972, and 1986

Plaintiff argues that defendants are required to produce documents 956, 962, 972, and 1986 because these are documents used to train or assist defendants' claim personnel in processing credit disability insurance claims. Plaintiff asserts that the magistrate judge ordered defendants to produce the

training and procedure guides from January 1, 2000, to December 31, 2006.

Defendants respond that these documents are not relevant to this case

because they discuss the impact of income on "own occupation" disability

claims, not "any occupation" claims, like the claim at issue in this case.

Defendants argue that they did not produce the documents attached to

Michael Stel's deposition because they are not responsive to plaintiff's request,

nor are they relevant to the issues here.

Plaintiff's request for documents seeks documents used in processing

disability insurance claims and does not distinguish between disability claims

based upon "own occupation" and "any occupation" policies.  See Docket 199-

3, at 4.  Further, the magistrate judge's order granting plaintiff's motion to

compel such documents also does not make a distinction between disability

claims based upon the policy wording.  Docket 84, at 2.  Although the claim at

issue in this case is an "any occupation" claim, the court finds no reason to

make such a distinction now.  As a result, the court orders defendants to

produce documents 956, 962, 972, and 1986, which relate to the impact of

income on "own occupation" disability claims.

**C.  Legal Documents**

In her First Set of Requests for Production of Documents, plaintiff issued

request 12, which asked defendants to provide "[a]ny and all guidelines,

reference material, legal opinions, or other documents that are now used or

have been used in the past to assist claims department employees in interpreting the meaning of 'total disability' after the first consecutive 12 months of total disability under its credit disability insurance policies." Docket 199-3, at 4. Plaintiff also issued request 13, which asked defendants to provide "[a]ny and all guidelines, reference material, legal opinions, court rulings, or other documents that are now used or have been used in the past to assist Defendants' employees in interpreting the meaning of the following provision in its credit disability insurance policies: 'You must contact us or your credit union about your Total Disability claim when you are eligible for benefits.' " Docket 199-3, at 4. Plaintiff further issued request 14, which asked defendants to provide "[a]ny and all guidelines, reference material, legal opinions, court rulings, or other documents that are now used or have been used in the past to assist Defendants' employees in interpreting the meaning of the following provision in its credit disability insurance policies: 'unless you have been legally incapable of filing proof of Total Disability, we won't accept it if it is filed one year from the time it should have been filed.' " Docket 199-3, at 4. In relation to these requests, the magistrate judge determined that any legal opinions which were prepared in anticipation of litigation if not disclosed to the plaintiff should be provided to the court for *in camera* review to determine if they constituted attorney work product. Docket 84, at 2.

### 1.  Legal Opinions

Plaintiff argues that defendants violated the court's order requiring production of legal opinions for *in camera* review because no such documents have been produced to the court.  Plaintiff specifically maintains that defendants have improperly limited document requests 13 and 14 to employees of their claims department when in fact the requests ask for legal opinions that are now used or have been used in the past to assist defendants' employees when interpreting particular insurance policy provisions. Defendants respond that a reasonable search was conducted for legal opinions that are used or have been used in the past to assist defendants' employees in interpreting the meaning of various provisions within the credit disability policy and that no such legal opinions exist.  Defendants argue that consequentially, there are no documents available for production to plaintiff or to the court for *in camera* review.  Defendants further maintain that no court opinions exist that would be responsive to plaintiff's document requests 13 and 14.

In their brief, defendants state that they conducted a reasonable investigation after the magistrate judge's decision "to determine if the *claims department* used or is using any legal opinions for assistance in interpreting the meaning of the terms referenced by Plaintiff in her production requests." Docket 210, at 7 (emphasis added).  But defendants' brief also states that

"Requests 12-14 seek production of legal opinions that are now used or have been used in the past to assist CUNA Mutual's *employees* in interpreting the meaning of various provisions within the credit disability policies [and that] [a] reasonable search has been conducted to determine whether such legal opinions exist." Id. at 8 (emphasis added).  Further Sarah Norberg uses interchangeably the terms defendants' employees and the claims department in relation to plaintiff's requests for legal opinions.  Docket 210-2, at ¶¶ 18, 20. As a result, it is unclear as to whether defendants have in fact conducted a reasonable search in relation to the legal opinions requested by plaintiff. Accordingly, to the extent defendants have possession, custody, or control of any legal opinions which were prepared in anticipation of litigation and used by defendants' *employees* in interpreting the meaning of the insurance provisions "You must contact us or your credit union about your Total Disability claim when you are eligible for benefits," and "unless you have been legally incapable of filing proof of Total Disability, we won't accept it if it is filed after one year from the time it should have been filed," the court orders defendants to produce such documents for *in camera* review.  See Docket 199-3, at 4.

### 2.   Court Decisions

The magistrate judge's order does not specifically address plaintiff's request for court opinions that are now used or have been used in the past to

assist defendants' employees in interpreting two different insurance provisions. Plaintiff argues that the magistrate judge's order did not address this subject because defendants' initial discovery response stated that defendant has no such court opinions.  Docket 199-3, at 4.  Defendants argue that nothing in the magistrate judge's order requires defendants to produce court opinions.

When plaintiff initially requested court opinions in relation to two insurance provisions, defendants represented that such documents did not exist.  As such, the magistrate judge did not consider whether these documents should be produced but rather considered defendants' objections to plaintiff's request.  The court finds that defendants must produce any court rulings that are now used or have been used in the past to assist defendants' employees in interpreting the insurance provisions "You must contact us or your credit union about your Total Disability claim when you are eligible for benefits" and "unless you have been legally incapable of filing proof of Total Disability, we won't accept it if it is filed after one year from the time it should have been filed," if such court opinions exist.  See Docket 199-3, at 4.

## II.   **Sanctions**

Plaintiff seeks sanctions for defendants' failure to comply with discovery requests.  Plaintiff argues that defendants are habitual offenders who believe the benefits of obstructing discovery outweigh any sanctions that the court is likely to impose.  Plaintiff further articulates ten examples of defendants'

13

willful obstructions of discovery and maintains that such obstructions have had serious effects.  Defendants respond that plaintiff's ten examples mischaracterize the facts and defendants' compliance with discovery in this case.

Pursuant to Rule 37, the court finds that plaintiff is entitled to an award of reasonable attorneys' fees and expenses incurred by plaintiff in making the motion.  Defendants were compelled by the court over a year ago to respond to these requests and if defendants had any doubt as to the meaning of the court's order to compel, defendants could have asked for clarification.  Plaintiff should file an affidavit detailing its monetary request by **July 29, 2008**. Defendants may then respond.

Based on the foregoing, it is hereby

ORDERED that plaintiff's fourth motion to compel production of documents (Docket 198) is granted.  Defendants' responses are due to plaintiff by **August 8, 2008.**

IT IS FURTHER ORDERED that plaintiff's motion for sanctions is granted.

Dated July 10, 2008.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
CHIEF JUDGE

14