UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| SHARON McELGUNN, as personal representative of the estate of Teri Powell, | ) ) ) ) | CIV. 06-5061-KES |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | ORDER ON DEFENDANTS' REMAINING MOTIONS IN LIMINE |
| CUNA MUTUAL GROUP; CUNA MUTUAL LIFE INSURANCE COMPANY; and CUNA MUTUAL INSURANCE SOCIETY, | ) ) ) ) ) ) | |
| Defendants. | ) | |

The court reserved ruling on defendants' motions in limine #9, #11, #13, #14, #16, and #18 at the pretrial conference and indicated it would issue a written opinion in relation to those motion. At this time, the court rules on the defendants' remaining motions in limine that are still pending before the court at this time.

## DISCUSSION

### I. Defendants' Motion in Limine No. 9: Spreadsheets and Profits in General

Defendants move to exclude the spreadsheets and corresponding financial information from admission in evidence. Defendants argue that the spreadsheets are inadmissible because plaintiff has not established any foundation for the financial information contained within the spreadsheets.

Defendants contend that plaintiff's attorney intends to use the spreadsheets in an inaccurate manner to support plaintiff's claim for damages. Defendants further argue that these spreadsheets will confuse the jury. Plaintiff responds that several spreadsheets created by CUNA illustrate financial results of CUNA and are admissible to show that CUNA's motive in denying claims based on untimely filing was money. Plaintiff submits that there are six spreadsheets, but that the primary spreadsheets she needs to explain the financial results of CUNA are the Tracking Sheet Phase I, Denial PTL Updated, and Tracking Sheet Supplemental Claims.

## A.  Tracking Sheet Phase I

Tracking Sheet Phase I is a spreadsheet of time filing claims.  It contains the insured's name, contract number, denial date, loan balance/date of loss, monthly loan payment, appeal dates, appeal outcome, appeal outcome date, and comments.  Docket 319-21 to Docket 319-25.

The Tracking Sheet Phase I was produced by defendants in response to plaintiff's request for production of documents #22, which requested copies of "Any Excel spreadsheets of time filing claims prepared by any of the following persons:  A. Helen Koppes; B. Lezlee Collier; C. Vicki Fredrickson."  All of these individuals were employees of defendants and their deposition testimony indicates that their entries to the spreadsheets were during the regular course of their employment duties.  For example,

Helen Koppes testified that she "logged claims into the Excel spreadsheet." Docket 319-59 at 9.

Furthermore, the parties stipulated to the foundation of the actual Tracking Sheet Phase I spreadsheet. Docket 319-54. In fact, the stipulation states that "[t]he producing party waives any objection that the documents are true and correct copies of the documents requested by the requesting party, and that they are authentic [but the] [p]roducing party may assert any other objections, including relevancy." Id. Therefore, the court finds there is sufficient foundation for the Tracking Sheet Phase I spreadsheet to be admitted into evidence.

In relation to improper use of the spreadsheet, plaintiff represents that she has no intention of arguing the "loan balance" shown on CUNA's spreadsheet is the direct equivalent of money saved by CUNA and that to do so would be an inappropriate portrayal of the information. But plaintiff also represents that she will argue that the information within the spreadsheet relates to CUNA's savings. Docket 319. The court finds that the Tracking Sheet Phase I spreadsheet is admissible.[1] Plaintiff's counsel may use the spreadsheet to discuss CUNA's financial results. Because defendants can

---

[1] Importantly, the spreadsheet is not admissible for Rule 404(b) purposes. That is, plaintiff may not talk about individual claims separately without a proper 404(b) analysis. The court does not have sufficient facts to analyze each of these claims under 404(b). Accordingly, this spreadsheet is not admissible for Rule 404(b) purposes but is only admissible for plaintiff's financial results arguments.

rebut any arguments made by plaintiff's counsel or further explain any important details about the spreadsheet omitted by plaintiff, admission of this spreadsheet will not prejudice defendants or confuse the jury.

**B.  Tracking Sheet, Phase I Updated**

Plaintiff submits that this spreadsheet was disclosed by CUNA in response to subsequent discovery requests seeking updated information of the same date included in Tracking Sheet Phase I.  Although the date of denial column is incomplete, the spreadsheet indicates that it contains information from March 28, 2006, to September 19, 2008.  Docket 319-70. The court finds that this update to the original Tracking Sheet, Phase I spreadsheet is admissible for the reason articulated above, but only up until the date that defendants reversed their decision to deny Powell benefits. Defendants' activities after that date are not within the time frame that Powell is alleging that defendants acted in bad faith and therefore are not relevant to this case.  In her deposition testimony, Nicole Posley indicated that defendants sent Powell an explanation of benefits on January 20, 2007. Nicole Posley Deposition at p. 43.  As such, the information corresponding with the dates of March 28, 2006, through January 20, 2007, contained within the Tracking Sheet, Phase I Updated spreadsheet is admissible.

### C. Denial PTL Updated

The Denial PTL Updated spreadsheet contains a list of time filing form letters issued to CUNA claimants from August 2, 2004, to September 19, 2008. This spreadsheet indicates which form letter was sent to the different claimants. Docket 319-17 to Docket 319-18. There are a total of seven form letters related to time filing, but only two of those are relevant here.

The first form letter, Denial-PTL-Correspondence (DENPTLCORR), which is identified as CUNA Mut. Ins. Soc. 202, states that "[i]n order to be eligible for continued benefits, proof of continued disability must have been received within one year from the date of [CUNA's] last correspondence." Docket 319-16. The letter goes on to explain that because CUNA received additional information pertaining to the insured's claim more than one year after CUNA's last correspondence, CUNA is "unable to consider [the] Credit Disability Insurance claim for additional benefits." Id. Therefore, this form letter deals with supplemental filing for additional benefits for a continuing disability. The facts in this case indicate that Powell's initial claim was denied because it was untimely, that is, she was not receiving any benefits at the time she filed the claim. Accordingly, the court finds that CUNA's denials of claims based on form letter 202 are not relevant and should be redacted from the spreadsheet. They are inadmissible as irrelevant and unfairly prejudicial.

The second form letter, Denial-PTL-Initial (DENPTLINITCLM), which is identified as CUNA Mut. Inc. Soc. 203, states that CUNA is "unable to consider [the insured's] claim because it was filed outside the time frame specified within the Certificate of Insurance." Docket 319-16. This letter is referring to a claimant's initial claim for disability benefits. Powell received a type of this form letter when CUNA initially denied her claim for disability benefits because CUNA claimed she filed her claim untimely. As such, the court finds that CUNA's denials of claims using form letter 203 as indicated in the spreadsheet are admissible because they are relevant and more probative than prejudicial.

The third form letter, Denial-PTL-Overturned (DENPTLOVERTURN), which is identified as CUNA Mut. Ins. Soc. 204, reminds the insured that his "claim for benefits has previously been denied due to failure to provide proof of disability within the time frame required under the terms of the certificate of insurance." Docket 319-16. The letter continues by stating that "[b]ased on additional information received, [it has] overturned [its] decision [and will] review [the insured's] claim to determine if benefits are payable as if it has been timely filed." Docket 319-16. This letter is sent after an insured's initial claim for benefits has been denied because the insured untimely filed his initial claim. Powell received a type of this form letter after her retained attorney wrote a letter to CUNA inquiring as to why

Powell's claim was untimely.[2]  Therefore, the court finds that CUNA's denials

of claims using form letter 204 as indicated in the spreadsheet are

admissible because they are relevant and more probative than prejudicial.

The fourth form letter, Denial-PTL-Supplemental (DENPTLSUPP),

which is identified as CUNA Mut. Ins. Soc. 206, states that CUNA is "unable

to consider [the] claim for additional benefits because the new information

was received after the required time frame specified within the Certificate of

Insurance."  Docket 319-16.  The letter explains that CUNA sent a request

to the insured asking for the insured to provide information within 30 days.

The letter also advises the insured that in order to be eligible for continued

benefits, proof of continued disability must have been received within a year

plus the thirty additional days.  The letter finally states that CUNA received

additional information pertaining to the insured's claim for additional

benefits more than one year from its last request for information and, as a

result, CUNA is unable to consider the insured's claim for additional

---

[2]  This form letter states that the time frame to file a claim for disability is
twelve months.  Depending on the language of the certificate of insurance, on
occasion, CUNA varied this form letter to state that the time frame to file a
claim for disability is fifteen months.  The fifteen-month language form letter is
identified as CUNA Mut. Ins. Soc. 205.  Docket 319-16.

benefits.[3]  Therefore, this form letter deals with supplemental filing for

additional benefits for a continuing disability.  The facts in this case indicate

that Powell's initial claim was denied because it was untimely, that is, she

was not receiving any benefits at the time she filed the claim.  Thus, the

court finds that CUNA's denials of claims based on form letter 206 should

be redacted from the spreadsheet because they are inadmissible as

irrelevant and unfairly prejudicial.

The fifth form letter, Denial-PTL-No Pmt (DENPTLSUPNOPMT), which

is identified as CUNA Mut. Ins. Soc. 208, includes the same substantive

information as the fourth form letter.  The letter explains that CUNA sent a

request to the insured, asking for the insured to provide information within

30 days.[4]  It follows that this form letter deals with supplemental filing for

additional benefits for a continuing disability.  The facts in this case indicate

that Powell's initial claim was denied because it was untimely, that is, she

was not receiving any benefits at the time she filed the claim.  As a result,

---

[3] This form letter states that the insurance company previously sent a request for information, asking the insured to provide the information within thirty days.  A variation of this form letter does not include the thirty-day requirement.  The form letter without the thirty-day requirement notice is identified as CUNA Mut. Ins. Soc. 206.  Docket 319-16.

[4] Also, like the fourth form letter, there is also a variation of the fifth form letter.  This form letter states that the insurance company previously sent a request for information, asking the insured to provide the information within thirty days.  A variation of this form letter does not include the thirty-day requirement.  The form letter without the thirty-day requirement notice is identified as CUNA Mut. Ins. Soc. 209.  Docket 319-16.

the court finds that CUNA's denials of claims based on form letter 208 should be redacted from the spreadsheet because they are inadmissible as irrelevant and unfairly prejudicial.

The sixth form letter, Denial-PTL-Upheld Appeal-Initial (DENPTLUPHELD), which is identified as CUNA Mut. Ins. Soc. 210, states that CUNA has received a written request to review its previous determination of the insured's credit insurance claim. The letter notifies the insured that the original decision denying benefits has been upheld. The letter informs the insured that because the insured did not submit proof of disability within one year from the time the insured became disabled, it is unable to consider the claim for benefits.[5] This letter is sent after an insured's initial claim for benefits has been denied and the insured requests the insurance company to review its previous decision to deny benefits. This letter informs the insured that the initial denial stands. The facts in this case indicate that Powell's initial claim was denied because it was untimely, but that the insurance company later overturned its initial denial of her claim and paid her benefits for one year. As a result, the court finds

---

[5] Like the fourth and fifth form letters, there is also a variation of the sixth form letter. This form letter states that the insured's claim is denied even after further consideration because the insured did not submit proof of disability within one year of becoming disabled. A variation of this form letter states that the insured's claim is denied even after further consideration because the insured did not submit proof of disability within fifteen months of becoming disabled. The form letter with the fifteen-month wording is identified as CUNA Mut. Ins. Soc. 211.

that CUNA's denials of claims based on form letter 210 should be redacted from the spreadsheet as they are inadmissible as irrelevant and unfairly prejudicial.

The seventh form letter, Denial-PTL-Upheld Appeal-Supplemental (DENPTLUAS), which is identified as CUNA Mut. Ins. Soc. 212, again states that CUNA has received a written request to review its previous determination of the insured's credit insurance claim. The letter notifies the insured that the original decision denying benefits has been upheld. The letter informs the insured that because the insured did not timely send information that CUNA requested, the claim is denied.[6] This letter informs the insured that the initial denial stands because the insured untimely filed supplemental information requested by the insurance company. The facts in this case indicate that Powell's initial claim was denied because it was untimely, but that the insurance company later overturned its initial denial of her claim and paid her benefits for one year. As a result, the court finds that CUNA's denials of claims based on form letter 212 should be redacted

---

[6] Like the fourth, fifth, and sixth form letters, there is also a variation of the sixth form letter. This form letter states that the insured's claim is denied because the insured failed to send proof of continued disability within one year from the date of the insurance company's last request. A variation of this form letter states that the insured's claim is denied because the insured failed to send proof of continued disability within fifteen month from the insurance company's last request. The form letter with the fifteen-month wording is identified as CUNA Mut. Ins. Soc. 213.

from the spreadsheet because they are inadmissible as irrelevant and unfairly prejudicial.

Based on the above discussion, the court finds that certain portions of the denial PTL updated spreadsheet are admissible.  Specifically, the portions of the spreadsheet that indicate a use of the second form letter, CUNA Mut. Ins. Soc. 203, and the third form letter, CUNA Mut. Ins. Soc. 204 or 205, are admissible.  The portions of the spreadsheet that refer to the other form letters must be redacted from the spreadsheet.

### D.    Denial PTL Updated Sorted by State

This spreadsheet contains the same information as the Denial PTL Updated but the information is sorted by state rather than form letter.  Docket 319-19 to 319-20.  This spreadsheet is admissible in accordance with the court's discussion regarding the Denial PTL Updated spreadsheet.

### E.    Tracking Sheet Supplemental Claims

Plaintiff contends that this spreadsheet contains claims that were denied in relation to supplemental time filing.  Docket 319-26.  As discussed above and in previous opinions, the court finds that a denial of a claim based on supplemental filing is fundamentally different from a denial of a claim based on initial filing.  Unlike an initial filing denial, which occurs when an insured is denied benefits without ever being awarded any benefits, a supplemental filing denial occurs after an insured has received benefits for a period of time and a claim for additional benefits is denied.  As such,

initial filing denial and supplemental filing denial relate to different requests

to the insurance company at different stages of the insurance claim process.

These situations are distinguishable and admission of evidence of

supplemental filing denials would unfairly prejudice defendants and likely

cause confusion to the jurors.  Accordingly, the tracking sheet supplemental

claims spreadsheet is inadmissible in its entirety.

  **F.**  **Dale Statz Email Filing Denials**

  Plaintiff submits that the Dale Statz email filing denials is a

spreadsheet that provides information similar to the Tracking Sheet Phase I,

except it does not contain insureds' names and extends only from

August 23, 2004, through September 21, 2007.  Docket 319-27, 219-28,

319-32.  The court has reviewed the spreadsheet and finds that although it

is organized by state, it provides the same information as the Tracking Sheet

Phase I spreadsheet.[7]  Therefore, the court finds that this spreadsheet is

cumulative and is inadmissible.

**II.**  **Defendants' Motion in Limine No. 11: Evidence of and References to CUNA Mutual's Reserves**

  Defendants argue that CUNA's reserves are inadmissible because a

reserve does nothing to assist plaintiff in proving defendants' alleged liability

and if allowed into evidence, such evidence will substantially prejudice

---

  [7] Unlike the Tracking Sheet Phase I spreadsheet, the Email Filing Denials spreadsheet appears that it may have been prepared in anticipation of litigation and not maintained by defendants in the regular course of business.

defendants. Defendants emphasize that courts have consistently found that reserves are not relevant because reserves are not admissions of liability or the amount of a particular claim. Defendants further urge that public policy mandates the nondisclosure of reserve information. Plaintiff responds that Eighth Circuit case law indicates that estimated liability set by the insurance company is probative of whether the company acted in bad faith, but defendants claim that the Eighth Circuit case law is distinguishable from this case.

In Kirkchoff v. American Casualty Company of Reading, Pennsylvania, 997 F.2d 401 (8th Cir. 1993), the Eighth Circuit determined that the trial court did not err when it found that evidence of the insurer's case estimate or reserve was admissible. The court found that the case estimate was admitted in the insured's tort case, as evidence of the insurer's bad faith in handling the insured's claim under the contract, not as evidence of the insured's liability under the contract. The court explained that if the insurer valued the insured's claim at $300,000 but offered only $8,000 to settle the insured's claim, evidence of that valuation was relevant to the issue of whether the insurer's settlement offers were made in good faith.

Kirchoff, however, is distinguishable from the instant case. In Kirkchoff, the issue was whether the insurance company acted in bad faith when it engaged in settlement discussions with the insured. As such, evidence of the insurer's reserve was relevant to show that the insurer acted

in bad faith in determining how much the plaintiff's claim was worth because the insurer offered to settle the plaintiff's claim for an amount substantially less than what the insurer valued her claim to be. In the present case, the issue is whether the insurance company acted in bad faith when delaying payment to the insured under the policy, not whether the insurance company acted in bad faith when valuing Powell's claim. Plaintiff alleges that defendants acted in bad faith when determining whether they should pay the claim and when they should pay the claim, not how much they should pay for the claim. Because Kirchoff deals with a different issue than the instant case, the court finds that it is not controlling in this case. The court finds that the probative value of the evidence of defendants' reserves in this case is substantially outweighed by its unfair prejudicial effect. Accordingly, the court finds that evidence of defendants' reserves is inadmissible.

## III.   Defendants' Motion in Limine No. 13: Ambiguity of the Insurance Policy

Defendants argue that determining whether an insurance policy is ambiguous is a question of law for the court to decide. As a result, defendants argue the testimony of any witnesses on whether the policy is ambiguous is irrelevant. Also, defendants argue that plaintiff should not be permitted to elicit testimony or introduce evidence as to various individuals' beliefs as to the meaning of the policy. Plaintiff agrees that the court is to

determine whether the insurance policy is ambiguous and does not intend to prove the policy was ambiguous through witnesses at trial. But plaintiff seeks to offer evidence establishing that high ranking CUNA claims personnel knew that when an insurance policy can be interpreted in two different ways, the policy should be construed against the drafter of the policy and that CUNA management did not provide its claim handlers any training on this rule.

It is undisputed that under South Dakota law, whether an insurance policy is ambiguous is a question of law. State Farm Mut. Auto. Ins. Co. v. Vostad, 520 N.W.2d 273, 275 (S.D. 1994). As such, the parties agree that no witness will be able to testify as to the legal ambiguity of the insurance policy. Rather, the court will instruct the jury on the meaning of the policy in its jury instructions.

South Dakota law also provides that "[w]here the provisions of an insurance policy are fairly susceptible of different interpretations, the interpretation most favorable to the insured should be adopted. This rule of liberal construction in favor of the insured and strictly against the insurer applies only where the language of the insurance contract is ambiguous and susceptible of more than one interpretation." Lakes' Byron Store, Inc. v. Auto-Owners Ins. Co., 589 N.W.2d 608, 609 (S.D. 1999). The fact that defendants' high ranking claims personnel knew this rule was applied in South Dakota and failed to provide claim handlers with any training on this

rule is relevant.  In order for plaintiff to establish that defendants acted in bad faith, she must show "an absence of a reasonable basis for denial of policy benefits [or failure to comply with a duty under the insurance contract] and the knowledge or reckless disregard [of the lack] of a reasonable basis for denial." Phen v. Progressive Northern Ins. Co., 672 N.W.2d 52, 59 (S.D. 2003).  See also SDPJI 30-20-20.  As such, evidence of defendants' knowledge and conduct is admissible because it relates to whether defendants had a reasonable basis to deny Powell's claim. Accordingly, plaintiff will not be able to establish whether the insurance policy is ambiguous through witnesses but will be able to introduce evidence of defendants' knowledge of interpretation rules and lack of training in this area.

## IV.    Defendants' Motion in Limine No. 14: Other Litigation and Involvement of Attorneys

Defendants move to preclude plaintiff from referencing any other litigation or involvement of attorney in any claims made against defendants. Defendants argue that defendants' involvement and actions in any other litigation is not relevant to the issue being presented in this case. Defendants further argue that even if the evidence is relevant, its probative value is substantially outweighed by the danger of unfair prejudice.

Plaintiff responds that evidence of other lawsuits in which defendants' time filing practice was challenged is relevant because those lawsuits put

defendants on notice of the fact that the policy language does not support their claim denial.  Plaintiff specifically references the Stultz lawsuit and the Savage lawsuit.  Plaintiff also points out that she can identify twenty-five times in which defendants have been sued on issues directly related to time filing.  Plaintiff further argues that defense counsel's involvement in other cases is relevant to show defendants' lack of mistake in submitting false discovery responses.

### A.    Other Litigation

The court has already determined that evidence of the Stultz and Savage lawsuits is inadmissible 404(b) evidence.  The court determined that although the Stultz claim was relevant to a material issue, was similar in kind and reasonably close in time to Powell's claim, and was supported by sufficient evidence, it was more prejudicial than probative.  The court explained that defendants settled Stultz's claim for reasons unknown to the court and that for the court to find that defendants settled Stultz's claim based solely on issues regarding the time filing provision within the insurance policy was speculative.  Accordingly, the court has already found that evidence of Stultz's lawsuit is inadmissible.  Similarly, the court determined that even though the Savage claim was relevant to a material issue, was similar in kind and reasonably close in time to Powell's claim, and was supported by sufficient evidence, it was more prejudicial than probative.  The court again explained that defendants settled Savage's claim

for reasons unknown to the court and that for the court to find that defendants settled Savage's claim based solely on issues regarding the time filing provision within the insurance policy was conjecture. As such, the court has already found that evidence of Savage's lawsuit is inadmissible. See Docket 380.

With respect to the other lawsuits involving defendants on issues related to time filing, plaintiff needs to identify these lawsuits and the pertinent information surrounding these lawsuits. Such information will enable the court to conduct a 404(b) analysis to determine whether evidence of these lawsuits is admissible.[8] If plaintiff finds it necessary to submit additional information, plaintiff must submit such information by **Thursday, May 28, 2009, at 5 p.m.**

## B.     Involvement of Attorneys

Plaintiff intends to use the fact that defense counsel has represented

---

[8] Plaintiff states that she has already demonstrated how defendants have been sued several time in cases directly involving the same issue of contract interpretation involved in the present case. In support of this statement, plaintiff cites to her statement of facts relevant to defendants' motion in limine, which is found at Docket 290. The court notes that in that document, plaintiff only identified two lawsuits that had been commenced against defendants— the Stultz lawsuit and the Savage lawsuit. The other situations were claims that were initially denied but later overturned after defendants received a letter from an individual knowledgeable in insurance law. Accordingly, if "other litigation" refers to all the situations on which the court has already ruled on, this motion is moot. But if "other litigation" refers to claims and documents the court is unaware of, plaintiff is ordered to submit that information to the court to allow the court to rule on its admissibility.

defendants on previous occasions to show that defendants knowingly submitted false discovery responses. The court agrees that this evidence is relevant to show that defendants may not have submitted completely accurate discovery responses. But plaintiff may not submit evidence about any details associated with the previous cases defense counsel has worked on. The probative value of such evidence would be substantially outweighed by its prejudicial effect because the court is unaware if these cases are even remotely related to the issue at hand in this case. Accordingly, plaintiff may submit evidence that defense counsel has worked for defendants before, but may not go into the details of such representation.

**V.      Defendants' Motion in Limine No. 16: CUNA Mutual's Marketing Materials**

Defendants move to preclude evidence of CUNA Mutual marketing materials. Defendants argue that the terms of the policy, not the marketing materials, control and therefore the marketing materials are irrelevant. Plaintiff responds that CUNA Mutual's marketing materials demonstrate that defendants marketed their policy as covering a reduction in income. Plaintiff urges that this is important because defendants are arguing that their policy excludes any consideration of income and that Powell's change in income is not relevant to determination of disability benefits eligibility.

Defendants' marketing materials imply that defendants' insurance policy will assist an individual when that person's income stops or is

significantly reduced.  Evidence of defendants' marketing materials is relevant to show that defendants knew or should have known that income was a factor when they denied Powell's claim.  Further, the court has already determined that although the policy definition of "total disability" does not specifically include an economic indicator, income of the insured can be considered in determining whether the insured is totally disabled. See Docket 300.  Significantly, these are advertising materials that were produced and distributed by defendants and therefore could be found to be an admission of a party opponent.  Defendants cannot make a representation in their advertising material and then seek not to be held to that representation.  Accordingly, the court finds that defendants' marketing materials are admissible.

**VI.     Defendants' Motion in Limine No. 18: Social Security or Other Forms of Public Assistance**

Defendants argue that evidence that the Social Security Administration (SSA) found Powell was disabled is irrelevant because defendants determine whether a member is entitled to benefits under the terms and definitions included in the insurance policy.  Defendants point out that social security and other forms of public aid have different requirements for an individual to qualify for benefits and the fact that plaintiff was eligible for social security benefits does not necessarily mean that the plaintiff qualified for benefits under the terms set forth in the

disability policy.  Plaintiff argues that the decision of the SSA is relevant because it demonstrates that Powell was found to be disabled, defendants knew about it, and defendants still denied Powell benefits under the insurance policy.  Plaintiff further emphasizes that defendants' own policies indicate that social security decisions are relevant because defendants have told their claims handlers that social security disability insurance award letters are to be treated the same as a medical report supporting total and permanent disability.

The court finds that the fact that the SSA found Powell was disabled is relevant.  In an unpublished opinion, the Sixth Circuit determined that the SSA's determination of disability was relevant to a determination of total disability under an insurance policy, but "it [was] not dispositive given the substantial differences between the SSA's and the [insurer's] plan's working definitions of disability."  Sparks v. Unum, 200 WL 1033003 at *4 (6th Cir. July 21, 2000).  See also Smith v. Hartford Life & Accident Ins. Co., 2007 WL 1748701 (S.D. Ohio 2007) (stating that the SSA's disability decision is relevant to a court's determination of whether a decision to terminate ERISA benefits is arbitrary and capricious).  Therefore, the fact that Powell was entitled to SSA benefits is relevant to the determination of whether she was "totally disabled" under the insurance policy in question, without being dispositive.

Additionally, the court finds the probative value of the SSA's disability determination is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Defendants and their counsel have been aware that the SSA determined Powell was disabled since plaintiff's Rule 26(a)(1) disclosures on October 17, 2006, and therefore have had substantial time to consider this in their disability determination and preparation for trial. Further, the fact that the social security standard for disability determination may be different from that required by the insurance policy may be explained to the jury to avoid any confusion. Accordingly, the court finds that the SSA disability determination is admissible and defendants' motion in limine in this regard is denied.

Based on the foregoing, it is hereby

ORDERED that defendants' remaining motions in limine (Docket 280) are granted in part and denied in part.

Dated May 27, 2009.

BY THE COURT:

/s/ Karen E. Schreier
KAREN E. SCHREIER
CHIEF JUDGE