UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| SHARON McELGUNN, as personal representative of the estate of Teri Powell, | ) ) ) ) | CIV. 06-5061-KES |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO |
| CUNA MUTUAL GROUP; CUNA MUTUAL LIFE INSURANCE COMPANY; and CUNA MUTUAL INSURANCE SOCIETY, | ) ) ) ) ) ) | LIMIT TESTIMONY OF PLAINTIFF'S RETAINED EXPERT GARY FYE |
| Defendants. | ) ) ) | |

Defendants move to bar and/or limit testimony of plaintiff's retained expert, Gary T. Fye. Plaintiff opposes the motion. The motion to limit Fye's testimony is granted in part and denied in part.

## DISCUSSION

Trial courts are given broad discretion in fulfilling their role as gatekeepers to insure that proffered expert testimony is both relevant and reliable. Wagner v. Hesston Corp., 450 F.3d 756, 758 (8th Cir. 2006). Further, district courts have great latitude in determining whether expert testimony meets the reliability requisites of the rule governing admissibility of such testimony. First Union Nat'l Bank v. Benham, 423 F.3d 855, 861 (8th Cir. 2005). To be admitted under Rule 702, expert testimony must meet

three prerequisites.  <u>Lauzon v. Senco Prods.</u>, 270 F.3d 681, 686 (8th Cir.

2001).

> First, evidence based on scientific, technical, or other
> specialized knowledge must be useful to the finder of fact in
> deciding the ultimate issue of fact.  This is the basic rule of
> relevancy.  Second, the proposed witness must be qualified to
> assist the finder of fact.  Third, "the proposed evidence must be
> reliable or trustworthy in an evidentiary sense, so that, if the
> finder of fact accepts it as true, it provides the assistance the
> finder of fact requires. . . ."

<u>Id.</u>

Moreover, opinion testimony from an expert is not "inadmissible solely

because it embraces an ultimate issue to be decided by the trier of fact."

<u>Kostelecky v. NL Acme Tool/NL Indus., Inc.</u>, 837 F.2d 828, 830 (8th Cir.

1988); Fed. R. Evid. 704(a).  The opinion must "assist the trier of fact to

understand the evidence or to determine a fact in issue."  <u>Kostelecky</u>, 837

F.2d at 829.  "Opinions that are phrased in terms of inadequately explored

legal criteria or that merely tell the jury what result to reach are not deemed

helpful to the jury."  <u>United States v. Whitted</u>, 11 F.3d 782, 785 (8th Cir.

1993).  A court should exclude expert testimony that is so fundamentally

unsupported that it cannot assist the jury.  <u>Hose v. Chicago Northwestern

Transp. Co.</u>, 70 F.3d 968, 974 (8th Cir. 1995).  "Doubts regarding whether

an expert's testimony will be useful should generally be resolved in favor of

admissibility."  <u>Sphere Drake Ins. PLC v. Trisko</u>, 226 F.3d 951, 955 (8th Cir.

2000).

Gary Fye is qualified to give an expert opinion. He has been continuously employed with the insurance industry as a claims handler or reviewer since 1962. He has been employed by major insurance companies and as an independent claims handler. He has previously testified as an expert regarding insurance claims practices in both state and federal courts in numerous states.

## I.      October 23, 2006, Preliminary Disclosures

The court will first address the admissibility of Fye's opinions located within his October 23, 2006, preliminary disclosure. The court notes that this ruling indicates which of Fye's opinions are admissible during his testimony. The preliminary disclosure itself as an exhibit is inadmissible as cumulative of Fye's testimony at trial.

### 1.      Defendants' Wealth

Fye states that "[i]f [he is] asked to testify about the influence of goal setting on claims handling, [he] would explain the relationship between emphasizing lower loss ratio and combined ratio and wrongful claim practices and how they relate to written and earned premium." Docket 392-2 at 10-11. Because goal setting in claims handling is an area of the insurance industry with which the jurors may not be familiar, such information may provide the jury with assistance in understanding the ultimate issues in this case. Fye's testimony is based on his specialized

knowledge of the insurance industry and he is qualified to give the opinion. Accordingly, Fye will be allowed to give this opinion.

**2.      General Principles of Insurance**

With respect to Fye's opinions regarding the general principles of insurance, which are contained within his preliminary disclosure, the court finds that an expert is not needed to testify as to the purpose of insurance. First, the jurors, based upon their life experiences and common sense, can form their own opinions as to the purpose of insurance and do not need the assistance of an expert.  Second, defendants' advertising material that plaintiff plans to introduce in evidence reveals the purpose of the credit disability insurance policy purchased by Powell.  Accordingly, Fye will not be allowed to testify as to his general opinions regarding the purpose of insurance or more specifically, the purpose of credit disability insurance purchased by Powell in this case.

**3.      Role of Insurance Companies**

The court finds that Fye's opinions regarding the role of insurance companies are admissible.  Fye opines that insurance industry standards require insurers to adopt and implement systems for the prompt investigation and settlement of claims and to objectively investigate reasons to pay claims, not just reasons that would support denying them.  Because Fye is qualified as an expert in the insurance industry, he may testify as to

the industry standards and whether defendants complied with those standards. This testimony will assist the jury in understanding what standards the insurance companies must follow. Therefore, Fye may testify as to his opinions regarding the role of insurance companies.

### 4. The Teri Powell Claim

As an insurance industry expert, Fye is qualified to testify as to insurance industry standards and whether defendants complied with those standards. With regards to the first paragraph, Fye is qualified to testify that Powell became disabled from teaching Spanish due to a combination of physical and emotional conditions. While Fye has no medical training, he is qualified to make a determination as to whether or not Powell was disabled under the terms of the insurance policy, similar to the role of a claims adjuster. Opinion testimony from an expert is not "inadmissible solely because it embraces an ultimate issue to be decided by the trier of fact." Kostelecky v. NL Acme Tool/NL Indus., Inc., 837 F.2d 828, 830 (8th Cir. 1988); Fed. R. Evid. 704(a). The opinion must "assist the trier of fact to understand the evidence or to determine a fact in issue." Kostelecky, 837 F.2d at 829. Opinions that are phrased in terms of inadequately explored legal criteria or that merely tell the jury what result to reach are not deemed helpful to the jury." United States v. Whitted, 11 F.3d 782, 785 (8th Cir. 1993). A court should exclude expert testimony that is so fundamentally

unsupported that it cannot assist the jury.  <u>Hose v. Chicago Northwestern</u>

<u>Trans. Co.</u>, 70 F.3d 968, 974 (8th Cir. 1995).  "Doubts regarding whether an

expert's testimony will be useful should generally be resolved in favor of

admissibility."  <u>Sphere Drake Ins. PLC v. Trisco</u>, 226 F.3d 951, 955 (8th Cir.

2000).

Fye's testimony as to whether Powell meets the insurance contract

definition of disabled will assist the jury because of his extensive knowledge

of insurance industry standards and the common language of policies.

Because jurors are unfamiliar with insurance industry standards and

procedures relating to credit disability claims, Fye's testimony will provide

an understanding of those standards and will help demonstrate whether

defendants met their standard of care under the law.  <u>See</u> <u>TCBY Sys., Inc. v.</u>

<u>RSP Co.</u>, 33 F.3d 925, 929 (8th Cir. 1994).  Thus, the court will allow Fye to

explain to the jury what a reasonable insurer would do with regard to

Powell's claim.  And the remainder of the information contained within the

first paragraph are all facts that Fye may properly rely upon in reaching his

opinion as to whether defendants acted in bad faith.

With respect to the second and third paragraphs, the court finds that

the facts articulated by Fye are facts that he may properly consider in

forming his opinion.  Accordingly, Fye may testify that he relied on these

facts to assist him in forming his opinion in this case.

**5.    Preliminary Opinions**

Fye's first preliminary opinion states that Powell's claim appears to be a covered claim that falls within insurance coverage and that testing the insured's resolve by erecting barriers to the acceptance of the claim is improper.  His opinion that defendants' correspondence is less than helpful and appears biased toward non-acceptance of Powell's claim is admissible because this is an opinion he formed by relying on the facts of the case and the standards of the insurance industry.

Fye's second preliminary opinion is admissible for the most part.  The only part of the opinion that is inadmissible states that withholding benefits increases financial stress and that CUNA did not use the policy to soften the financial consequences of Powell's disability.  These statements address common sense concepts that a jury will understand based on their experience and life experiences.  But the rest of the opinion deals specifically with insurance industry standards and whether defendants have complied with those standards and therefore is admissible.

Fye's third preliminary opinion is admissible because it relates to the insurance industry standards and defendants' compliance with those standards.

## II.     December 21, 2006, First Supplemental Disclosure

The court next addresses the admissibility of Fye's opinions located within his December 21, 2006, first supplemental disclosure.  The court notes that this ruling indicates which of Fye's opinions are admissible during his testimony.  The first supplemental disclosure report itself is inadmissible as cumulative of Fye's testimony at trial.

### 1.     Defendants' Worth

Fye states that the 2005 CUNA Mutual Group Annual Report indicates that for 2005, the reported figures are $14.574 billion for assets and $1.658 billion for surplus.  Docket 392-3 at 2.  Fye is not a financial expert.  Rather, he is an expert in the insurance industry qualified to testify as to insurance industry standards.  Plaintiff may solicit evidence of defendants' wealth and profits from other witnesses and does not need an expert to testify as to defendants' wealth and profits.  Accordingly, Fye's opinions as to defendants' wealth as articulated in his first supplemental disclosure are inadmissible.

### 2.     The Teri Powell Claim

As noted above, Fye is an insurance industry expert and therefore is qualified to testify as to insurance industry standards and whether defendants complied with those standards, which includes whether Powell became disabled as defined under the insurance contract from teaching

Spanish due to a combination of physical and emotional conditions. Furthermore, the rest of the information contained within the first paragraph includes facts that Fye may properly rely upon in forming his opinion as to whether defendants acted in bad faith. This information includes the fact that Powell bought life and total disability insurance, that medical records of Dr. Berry, Dr. Hill, and Dr. Lawlor documented Powell's condition, and that Powell's status worsened over time.

With respect to the second paragraph, the court finds that Fye may rely on the facts to form his opinions in this case that from 2003 onward Powell remained able to care for animals in other people's homes and make hats; that this work was part time at either a net loss or at minuscule pay levels; and that Powell also did some volunteer work and helped friends. But Fye may not opine that the circumstances show this work was largely a labor of love and like a hobby because this is an opinion outside the scope of Fye's expertise. Fye is an insurance industry expert, not a vocational expert or psychological expert capable of determining the exact nature and intent of Powell's activities. Indeed, Powell is the best person to testify as to whether her ventures were considered work or hobbies.

Regarding the third paragraph, Fye's opinion that attempting to disqualify an insured from total disability benefits because she is capable of some activity tends to thwart the purpose of coverage is proper and

admissible.  Further, the fact that medical support for Powell's disability claims is supported by the Social Security Administration's and South Dakota Retirement System's findings of disability is information that Fye can properly rely on in forming his opinions in relation to this case.

In relation to the fourth and fifth paragraphs, the court finds that the facts articulated by Fye are facts that he may properly consider in forming his opinion.  Accordingly, Fye may testify that he relied on these facts to assist him in forming his opinion in this case

### 3. Claim Standards and Practices

This section of Fye's first supplemental disclosure contains ten opinions relating to insurance claim handling.  The court finds that all of these opinions are admissible.  Fye's testimony will assist the jury because of his extensive knowledge of insurance industry standards.  Fye's specialized knowledge of practices within the insurance field and the proper method of handling an insurance claims is relevant, helpful, and admissible as testimony in a bad faith case.  See St. Joe Minerals Corp. v. Occupational Safety and Health Admin. Review Comm'n, 647 F.2d 840, 845 n.8 (8th Cir. 1981) (evidence of industry standards made the existence of an unreasonably dangerous condition more or less probable).  Because jurors are unfamiliar with insurance industry standards and procedures relating to insurance claims, Fye's testimony will provide an understanding of those

standards and will help demonstrate whether defendants met their standard of care under the law.  See TCBY Sys. Inc., 33 F.3d at 929 (expert could properly testify to the inadequacy of the franchise's custom and practices).  Thus, the court will allow Fye to explain to the jury what a reasonable insurer would do and whether defendants acted in a manner consistent with this.

**4.    Conclusions**

The opinions expressed in the first paragraph are admissible.  His opinion that defendants' correspondence is less than helpful and appears biased towards non-acceptance of Powell's claim is admissible because this is an opinion he can reach while relying on the facts of the case and the standards of the insurance industry.  Additionally, his opinion as to the form letters is also admissible because again this is an opinion formed while relying on the facts of the case and the standards of the insurance industry.

Similarly, the opinions expressed in the second paragraph are admissible with the exception of the first sentence.  Again, as the court has already pointed out, an expert is not needed to advise the jury about the purpose of insurance and the consequences that follow when an insured does not receive payments under an insurance policy.  Accordingly, Fye may not testify as to the fact that the CUNA policy was purchased to soften the financial consequences of Powell's disability.  But his opinion that CUNA's

denial is improper if the claims handlers do not take steps to learn the circumstances that would bring the claim under coverage and that defendants continued to deny Powell's claim are both admissible.

## III. February 24, 2009, Second Supplemental Disclosure

Finally, the court addresses the admissibility of Fye's opinions contained within his February 24, 2009, second supplemental disclosure. The court notes that this ruling indicates which of Fye's opinions are admissible during his testimony. The second supplemental disclosure report is inadmissible as cumulative of Fye's testimony at trial.

### 1. Defendants' Wealth

Fye's opinion as to defendants' wealth is the same as his opinion set forth in his preliminary disclosure. As the court had already determined, Fye's opinion as to defendants' wealth is admissible. Accordingly, Fye's opinion as to defendants' wealth as articulated in his second supplemental disclosure is admissible.

### 2. General Principles of Insurance

Fye's opinion as to the general principles of insurance is substantially similar to his opinion set forth in his preliminary disclosure. For the reasons previously articulated by the court, Fye will not be allowed to testify as to his general opinions regarding the purpose of insurance.

### 3.      Disability Insurance

Fye's opinion as to disability insurance is new and has not previously been set forth in his preliminary disclosure or his first supplemental disclosure.  Fye's opinion articulated in the first paragraph is inadmissible. The court has already determined that the jurors, based upon their life experiences and common sense, can form their own opinions as to the purpose of insurance and will not need the assistance of an expert.  Second, defendants' advertising material that plaintiff plans to introduce in evidence reveals the purpose of the credit disability insurance policy purchased by Powell.

The opinions of Fye contained in the second paragraph are admissible.  The court finds that Fye's explanation as to the meaning of "disability," as long as consistent with the court's interpretation of that term, will assist the jury in understanding the insurance policy and the insurer's obligations to the insured under that policy.

The opinions of Fye included in the third paragraph are inadmissible. These statements are generalizations regarding an insured's circumstances and reasons for purchasing disability insurance.  The issue in this case is whether defendants acted in bad faith in denying or delaying payment to Powell on her claim, not whether Powell felt compelled to purchase the insurance and was aware of the nature of the coverage.

The opinions contained in the fourth paragraph are admissible. These statements discuss the time filing provision and the obligation of insurance companies in relation to that provision. Such subject matter is relevant to this litigation and these opinions will assist the jury in determining whether defendants acted in a reasonable manner in this case.

**4.      Role of Insurance Companies**

The opinions contained in the first and second paragraphs of this section are substantially similar to the opinions set forth in Fye's preliminary disclosure. For the reasons stated in the court's discussion regarding Fye's preliminary disclosure, these opinions are admissible.

The opinions located in the third paragraph have not previously been disclosed by Fye. The court finds these opinions are admissible. Fye explains what laws, regulations, and standards an insurance company must follow. Because Fye is qualified as an expert in the insurance industry, he may testify as to the industry standards and whether defendants complied with those standards. This testimony will assist the jury in understanding what standards the insurance companies must follow.

Likewise, the opinions located in the fourth paragraph were not previously disclosed by Fye. These opinions are also admissible. Fye explains how an insurance company should handle claims in order to be in compliance with industry standards. Again, because Fye is qualified as an

expert in the insurance industry, he may testify as to the industry standards and whether defendants complied with those standards. This testimony will assist the jury in understanding what standards the insurance companies must follow.

### 5.     Claims-Handling Standards

The introductory paragraph and the first ten bullet points are substantially similar, if not the same, as Fye's opinions set forth in his first supplemental disclosure. While there may be slight differences between his opinions disclosed here and his previously disclosed opinions, the court finds the substance of the opinions are the same. Accordingly, the court adheres to its previous ruling in relation to these opinions as disclosed in Fye's first supplemental disclosure.

The new opinions expressed in the additional six bullet points are admissible. Fye's testimony will assist the jury because of his extensive knowledge of insurance industry standards. Fye's specialized knowledge of practices within the insurance field and the proper method of handling insurance claims is relevant, helpful, and admissible as testimony in a bad faith case. See St. Joe Minerals Corp., 647 F.2d at 845 n.8. Because jurors are unfamiliar with insurance industry standards and procedures relating to insurance claims, Fye's testimony will provide an understanding of those standards and will help demonstrate whether defendants met their standard

of care under the law.  See TCBY Sys. Inc., 33 F.3d at 929.  Thus, the court

will allow Fye to explain to the jury what a reasonable insurer would do and

whether defendants acted in a manner consistent with this.

**6.     The Teri Powell Claim**

The opinions contained in the first three paragraphs are the same as

the opinions expressed by Fye in his preliminary disclosure.  Accordingly,

the court's previous ruling regarding these three paragraphs is applicable

here.

The fourth paragraph contains new opinions not previously disclosed.

The court finds that the facts articulated by Fye are facts that he may

properly consider in forming his opinion.  What defendants knew at the time

they denied Powell's claim is relevant to whether defendants complied with

industry standards.  Accordingly, Fye may testify that he relied on these

facts to assist him in forming his opinion in this case.

**7.     Findings**

The opinions contained in the first, fourth, and fifth bullet points are

the same opinions articulated by Fye in his preliminary disclosure.  As

such, the court adheres to its ruling on Fye's preliminary disclosure with

respect to the admissibility of these opinions.

The opinions in the second, third, sixth, seventh, and eighth bullet

points have not previously been disclosed.  The opinions contained in the

second, third, and sixth bullet points are admissible.  These opinions deal

directly with defendants' conduct in relation to insurance industry

standards.  The opinion contained in the seventh bullet point is

inadmissible.  This opinion makes reference to turning CUNA's practices

over to authorities for investigation.  The court finds that the probative value

of any reference to such investigation is substantially outweighed by unfair

prejudice.  Therefore, Fye may not opine on this subject matter.  Finally, the

opinion contained in the eighth bullet point is admissible in part.  Fye may

testify that in his opinion, CUNA's handling of the Powell case was below the

standards CUNA should meet in South Dakota.  The rest of opinions are

inadmissible because they relate to the opinion that "[t]he material reviewed

to date has become the tip of the iceberg."  Docket 285-3 at 12.  The court

finds that the probative value of the opinions on such subject matters is

substantially outweighed by the unfair prejudice.  Additionally, Fye has not

provided any bases for these opinions.

## IV.    Additional Areas of Inappropriate Testimony Anticipated from Fye That Should Be Barred

### 1.    Any reference to any South Dakota case law sent to him by counsel or otherwise.

Plaintiff argues that limited references to South Dakota case law will

be necessary because the law and the insurance industry claims practices

cannot be separated.  To the extent Fye used South Dakota case law in

conjunction with other material to form an opinion as to the standard of care in the insurance industry when considering a claim, reference to such case law will be allowed. If defendants believe Fye's opinion impermissibly crosses the line into improperly instructing the jury on the law, defendants should object at that time.

## 2. Any interpretation of South Dakota law from case law sent to him by counsel or otherwise.

Plaintiff submits that Fye is not going to "interpret" South Dakota law but he will testify as to how CUNA's conduct relates to certain requirements of law. The parties agree that Fye cannot testify as to the interpretation of South Dakota law because that is within the province of the court. But, as mentioned above, to the extent Fye used South Dakota case law in conjunction with other material to form an opinion as to the standard of care in the insurance industry when considering a claim, reference to such case law will be allowed. Again, if defendants believe Fye's opinion impermissibly crosses the line into improperly interpreting South Dakota law, defendants should object at that time.

## 3. Any commentary on who has the burden of proof of loss in light of his reference to a California case, <u>Egan</u>.

Plaintiff represents that Fye will not testify about the burden of proof, but he will testify about the burden of investigation. Plaintiff further represents that the emphasis of Fye's testimony in this regard is that

insurance companies have an affirmative duty to find out the facts and not just collect facts that support denial. Such testimony is an opinion as to the standard of care in the insurance industry with respect to handling claims. Because jurors are unfamiliar with insurance industry standards, Fye's testimony will provide an understanding of those standards and will help demonstrate whether defendants met their standard of care under law. See TCBY Sys., Inc., 33 F.3d at 929.

**4.    Any testimony as to what the "any occupation" provision means, as that is within the province of the court.**

Plaintiff contends that Fye will not "interpret" the "any occupation" provision of the policy, or any other provision of the policy, but he will take the interpretation the court provides and use it as part of the basis for his explanation of what is required of an insurance company and how it relates to Powell's claim. Thus, both parties agree that Fye will not be able to testify as to what the "any occupation" insurance provision means because the court will instruct the jury as to the proper interpretation of the provision. To the extent Fye finds it necessary to refer to the "any occupation" provision, as interpreted by the court, to explain the standard of care in the insurance industry when considering disability claims, he is able to do so. But if defendants believe Fye's opinion impermissibly crosses the line into improper legal opinion, defendants should object at that time.

**5.     Any testimony that the policy is ambiguous, as that is within the province of the court.**

Plaintiff submits that Fye will not "interpret" the policy, but he will take the interpretation the court provides and use it as part of the basis for his explanation of what is required of an insurance company and how it relates to Powell's claim.  Again, both parties agree that Fye will not be able to testify as to the interpretation of the policy because the court will instruct the jury regarding the interpretation of the policy.  To the extent Fye plans to rely on defendants' internal emails about how the policy should be applied to reach his conclusion as to whether defendants acted in bad faith, he may do so.  Again, if defendants believe Fye impermissibly crosses the line into improper legal opinion, defendants should object at that time.

**6.     Any testimony as to how an insurance adjuster should handle ambiguity within the policy, as that is an issue of law for the court.**

Plaintiff contends that testimony about how an insurance adjuster should handle an ambiguity is a question about insurance industry practices and standards and is an appropriate area for Fye's testimony.  The court agrees that how an insurance adjuster should handle an ambiguity in an insurance policy is a question about insurance industry practices and standards.  But both parties submitted to the court and the court found that the insurance policy at issue in this case was not ambiguous.  Accordingly, because there is no ambiguous insurance policy at issue in this

case, any testimony by Fye about industry standards in relation to an ambiguous insurance policy is irrelevant. This does not preclude Fye from relying on testimony of witnesses that they found the policy confusing and expressing an opinion as to what claim handlers should be trained to do in such circumstances and whether the claim handlers acted in that manner. As stated before, if defendants believe Fye impermissibly crosses the line into improper legal opinion, defendants should object at that time.

7.     **Any commentary on what various provisions of the insurance policy mean, as that invades the province of the court.**

Plaintiff submits that Fye will not "interpret" the various provisions of the policy, but he will take the interpretation the court provides and use it as part of the basis for his explanation of what is required of an insurance company and how it relates to Powell's claim. Again, both parties agree that Fye will not be able to testify as to the interpretation of the various policy provisions because the court will instruct the jury regarding the interpretation of the policy. To the extent Fye finds it necessary to rely on the policy provisions, as interpreted by the court, to form an opinion as to the standard of care in the insurance industry when considering this particular type of disability insurance policy, he may do so. But if defendants believe Fye impermissibly crosses the line into improper legal opinion, defendants should object at that time.

**8.**     **Any opinions that a claim is a covered claim and that the defendant breached its contract.  That is an opinion to an ultimate fact and an improper legal conclusion.**

Plaintiff argues that opinions that the claim is a covered claim and that defendants breached their contract are part of what is at issue and is admissible expert opinion testimony.  Plaintiff moved to dismiss her breach of contract claim and the court granted the motion.  Accordingly, only a bad faith claim remains.  It follows that plaintiff must prove that defendants acted in bad faith when they denied or delayed payment on her claim.  As such, any opinion that Powell's claim is a covered claim that defendants wrongfully denied or delayed payment on Powell's claim is relevant and permissible expert opinion testimony.  See I, 4 above.

**9.**     **Any commentary on the claim being sent to CUNA Mutual's SIU (Special Investigation Unit), and what a fraud unit is, as that is irrelevant to this case.**

Plaintiff contends that testimony on the claim being sent to CUNA's fraud investigation unit is an essential part of how CUNA handled the claim and goes to CUNA's unreasonableness in handling the claim in light of the facts known to it at the time.  If plaintiff introduces evidence that Powell's claim was sent to CUNA Mutual's SIU, Fye is allowed to testify as to the standard in the insurance industry relating to why claims are sent to SUI and what, as a general practice, an insurance company accomplishes through sending a claim to SIU.  This is relevant to determine whether the

manner in which CUNA dealt with Powell's claim complied with insurance industry standards.

**10. Any testimony that CUNA Mutual is selling "peace of mind," as that is an invasion of the mental process of the company and is an interpretation of the contract, which is improper.**

Plaintiff argues that the "peace of mind" testimony is testimony about the insurance industry and is not objectionable. The court finds that an expert is not needed to testify as to the purpose of insurance. First, the jurors, based upon their life experiences and common sense, can form their own opinions as to the purpose of insurance and will not need the assistance of an expert. Second, defendants' advertising material that plaintiff plans to introduce in evidence reveals the purpose of the credit disability insurance policy purchased by Powell. Accordingly, Fye will not be able to testify that insurance is supposed to give insureds "peace of mind."

**11. Any testimony on defendants' net worth because it is solely to create bias against CUNA Mutual.**

Plaintiff argues that CUNA's wealth is relevant to punitive damages. Fye is not a financial expert. Rather, he is an expert in the insurance industry. As such, his testimony should be limited to the insurance industry standards and whether defendants complied with those standards when handling Powell's claim. Plaintiff may solicit defendants' net worth

from another witness and does not need an expert to explain the net worth of defendants to the jury.

> **12.** **Any testimony on discovery issues between the parties and/or alleged bad faith of the company in response to discovery because it is not relevant.**

Plaintiff argues that testimony on discovery issues between the parties is relevant. The court agrees that the discovery issues between the parties are relevant. In fact, the court has ruled that answers to discovery requests and amended answers are admissible.[1] But the court finds that Fye may not testify about this issue. If a party's discovery responses are inconsistent or indicate an attempt to conceal documents, the jurors will be able to determine this based on their common sense and do not need assistance from an expert. Further, it has not been submitted to the court that Fye is an expert in determining whether an insurance company properly complied with a legal discovery request. Rather, Fye has been presented as an expert relating to claim handling in the insurance industry. Moreover, evidence of failure to comply with a discovery request goes to the credibility of a party and it is the sole province of the jury to determine credibility.

---

[1] The court also ruled that any court sanctions imposed on the parties due to discovery disputes are inadmissible.

**13. Any commentary on witnesses' or consultants' credibility, as witness credibility lies within the province of the jury.**

Plaintiff represents that she does not to intend to offer testimony from Fye on other witnesses' or consultants' credibility. The parties agree and the court orders that Fye will not be able to testify as to the credibility of other witnesses or consultants.

**14. Any commentary on claims handling post-suit.**

Plaintiff responds that CUNA's bad faith includes its claim handling to the end of the claim, after Powell's death, so testimony about CUNA's claims handling after August 15, 2006, when Powell filed the instant lawsuit, is part of plaintiff's case. Plaintiff submits that defendants' refusal to pay benefits during the last five months of Powell's life is harm defendants inflicted on her. The court finds that the handling of Powell's claim up until defendants paid off Powell's loan is relevant to this case. To prove defendants acted in bad faith, plaintiff must prove that defendants denied Powell's policy benefits or failed to comply with a duty under the insurance contract without a reasonable basis and that defendants knew or recklessly disregarded that lack of a reasonable basis. See Phen v. Progressive Northern Ins. Co., 672 N.W.2d 52, 59 (S.D. 2003). Defendants' conduct and reasons for denying Powell's claim provide the basis for her bad faith cause of action. Accordingly, evidence of defendants' handling of Powell's claim until they paid off her loan is admissible.

**15.    Any commentary on insurance policy time filing provision under the law of states other than South Dakota.  Insurance laws in other states are different and are not at issue in this case.**

Plaintiff submits that she does not intend to offer testimony about the time filing laws in other states with four exceptions.  Plaintiff will offer defendants' own testimony that they determined that the law in twenty-five states does not support use of the time filing provision.  The court finds that such testimony is admissible.  As is customary with all experts, Fye may rely on statements made by others to form his opinion as long as such facts are reasonably relied upon by experts in the field in forming opinions.  Fed. R. Evid. 703.

Plaintiff will show that the policy language defendants use in South Dakota is the same as the policy language used in the states where defendants discontinued their application of the time filing provision. Again, the court finds that such testimony is admissible.  As is customary with all experts, Fye may rely on statements made by others to form his opinion as long as such facts are reasonably relied upon by experts in the field in forming opinions.  Id.

Plaintiff will show that the requirement of prejudice as a condition of denying a claim, based on late notice is common and therefore defendants should have been aware of this.  The court finds testimony regarding defendants' knowledge at the time they denied Powell's claim is relevant and

admissible.  Fye may testify as to the insurance industry standards and training in relation to applying the notice prejudice rule but cannot offer a legal opinion as to which states apply this rule and which states abstain from applying this rule.  Further, as is customary with all experts, Fye may rely on statements made by others to form his opinion in relation to defendants' knowledge or conduct.

Plaintiff will show that the rule that ambiguous policy provisions must be interpreted in favor of the policyholder is standard in the United States and therefore CUNA had no reason to be surprised upon encountering it in South Dakota.  Because both parties submitted to the court and the court found that the insurance policy at issue was not ambiguous, any testimony by Fye about industry standards in relation to an ambiguous insurance policy is irrelevant.  But this does not preclude Fye from relying on testimony of witnesses that they found the policy confusing and expressing an opinion as to what claim handlers should be trained to do in such circumstances and whether the claim handlers acted in that manner.  As stated before, if defendants believe Fye impermissibly crosses the line into improper legal opinion, defendants should object at that time.

**16. Any commentary on CUNA Mutual's application of time filing issues in other states and/or re-adjudication of claims in other states as this is not relevant and its probative value is substantially outweighed by the danger of prejudice.**

Plaintiff responds in the same manner as she responded to #15. The court has previously ruled that certain Rule 404(b) evidence is admissible. To the extent plaintiff introduces that evidence, Fye is permitted to testify as what insurance industry standards an insurance company should comply with in situations in which similar claims have been handled in a similar manner by an insurance company. In other words, Fye is permitted to testify about insurance industry standards relating to an initial denial of a claim based on untimely filing and subsequent reversal of that denial.

**17. Any testimony about the intent of mental processes or other witnesses.**

Plaintiff states that she does object if the intent of the motion is to preclude experts from testifying that defendants did or did not commit "bad faith" or similar references. The court finds that Fye cannot testify as the intent or mental processes of witnesses. The jury must determine this and Fye is not an expert in this area.

**18. Any medical testimony as to whether plaintiff was disabled.**

Plaintiff responds that Fye will not diagnose Powell's condition but will refer to the medical evidence that was presented to CUNA and must do so to explain how CUNA's handling of Powell's claim lacked a reasonable basis.

As such, the parties agree and the court rules that Fye cannot testify as to Powell's medical condition. But Fye will be able to testify about the standard in the insurance industry as to how this medical information should be reviewed and whether defendants complied with this standard in Powell's case. It follows that this discussion may involve what medical evidence was presented to CUNA in relation to Powell and how defendants handled that information. Therefore, such testimony is admissible.

**19.  Any testimony related to Ms. Powell's income, employment history or potential, as these types of opinions are outside of Mr. Fye's disclosures and qualifications, and further, that any such testimony is no longer at issue since the only remaining claim in this matter relates to delay of payment of benefits.**

Plaintiff contends that Fye will not give vocational expert testimony but will refer to the facts of the case insofar as they are relevant to his opinions. The parties agree and the court finds that Fye may not testify as to issues that normally would be addressed by a vocational expert. To the extent Fye used certain facts regarding Powell's situation in forming his opinion, testimony in relation to those facts is admissible. If defendants believe Fye's opinion impermissibly crosses the line into improperly testifying as to matters he is unqualified to testify about, defendants should object at that time.

**20.   Any testimony related to rates, rate filings, their relation to claim practices through benefits and profits (suggesting one influences the other).  Fye conceded that he does not know the rate scheme in South Dakota, and furthermore that "rate making is not my field."**

At his deposition, Fye stated that he thinks "there's a universe of material about the development and the approval of forms and rates that's kind of separate and aside from the claim issue."  Docket 392-4 at 6-7.  He further stated that such material is "not essential to [his] analysis that the behavior [CUNA's] behavior [was] incorrect."  Id. at 7.  Fye also indicated that he had not reviewed any rate filing material in relation to this case.  Based upon his deposition testimony, it appears Fye does not intend to offer an opinion in relation to rates, rate filings, or their relation to claim practices.  If the court is mistaken, plaintiff should notify the court before Fye testifies and the court will hold a Daubert hearing outside the presence of the jury to determine whether Fye is qualified to testify as to this subject matter.

**21.   Any testimony that CUNA Mutual makes large or excessive profits, or that any profits are made related to time-filing mechanisms, as he conceded he does not know, doesn't have any documentation about that, or if he does, he does not understand it.**

As discussed above, Fye is not a financial expert.  Rather, he is an expert in the insurance industry.  As such, his testimony should be limited to the insurance industry standards and whether defendants complied with

those standards when handling Powell's claim.  Plaintiff may solicit

defendants' net worth from another witness and does not need an expert to

testify as to defendants' profits.  Further, Fye's deposition testimony

indicates that he does not have any information to support the opinion that

defendants' profits are directly related to time-filing mechanisms.

Accordingly, testimony to this effect is precluded unless Fye is able to

identify the documents he relied on in reaching his opinion.

**22.    Any testimony related to any risk analysis calculations
regarding the time filing, as he is unaware of any such
actions.**

At his deposition, Fye stated that he is not aware of any witness that

has stated that a risk analysis calculation was done before enforcement of

the time filing rule.  Docket 392-4 at 20.  Further, he testified that he has

not seen any document that makes specific reference to performance of a

risk analysis calculation with respect to enforcement of the time filing

provision.  Moreover, Fye testified that he has not seen any documentation

or testimony that a script tree was created.  Id.  Based upon his deposition

testimony, it appears Fye does not intend to offer an opinion in relation to

any risk analysis calculations regarding the time filing provision because he

has not seen any type of documentation or heard any type of evidence that

would support such an opinion.  Accordingly, Fye is prohibited from

testifying as to this subject matter.

23. **Any testimony regarding periods not at issue in this litigation, that is, periods where no disability existed or was claimed: May 16, 2003 through April 4, 2005; June 2, 2005 through June 14, 2006.**

The relevant time period in this case is from when Powell first filed her disability claim until defendants paid off her loan after she died. Defendants are requesting that the court allow Fye to testify as to only a portion of the relevant time period. The court finds that Fye may testify as to the claim handling practices of defendants during the relevant time period. The fact that defendants paid off Powell's loan does not mean that plaintiff cannot claim defendants wrongfully denied claims throughout the time period until they paid her loan in full. Therefore, defendants' motion in this regard is denied.

24. **Any testimony that is not limited to delay of benefits, which is the only matter remaining at issue in this case. For example, the 20-hour rule relates to income and is no longer proper.**

First, the reasons why defendants denied Powell's claim, whether it be based on untimely filing or the fact that she worked at least twenty hours a week is relevant to this case. Defendants' denials of Powell's claim are what caused a delay in payment to her. Accordingly, to the extent defendants are moving to preclude Fye from testifying as to whether the defendants' denials of Powell's claims and subsequent delay in payment was in compliance with the insurance industry standard for claim handling, that motion is denied.

Second, this motion is too broad for the court to rule on at this time.  If defendants believe Fye begins to impermissibly testify about matters outside the scope of this case, defendants should object at that time.

Based on the foregoing, it is hereby

ORDERED that defendants' motion to bar and/or limit testimony of plaintiff's retained expert, Gary T. Fye (Docket 392) is granted in part and denied in part.

Dated May 31, 2009.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE